IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**AVINOAM DAMTI,**

       **Plaintiff,**

v.                                                    Civil Action No. 2:07cv28
                                                            (Judge Maxwell)

**OFFICER GONZALES, OFFICER MURPHY,
OFFICER PHELPS, OFFICER CURRAS, OFFICER
R. WILSON, OFFICER VERONICA FERNANDEZ,
OFFICER WILLIAM LAYHUE, OFFICER R. TRYBUS,
OFFICE YOUNG, OFFICER LEISURE, OFFICER GARCIA,
CAROL KONCHAN, WARDEN AL HAYNES, DOMINIC
GUTIERREZ, SR., SUSAN S. MCCLINTOCK, DR. WATERS,
ADMINISTRATOR BRESCOACH, MARTHA BLANCO, KIM
WHITE, HARRELL WATTS, CAPT. OF USP HAZELTON,
OFFICER GRADISKA,**

       **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On April 3, 2007, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). On April 12, 2007, the plaintiff was granted permission to proceed as a pauper. Plaintiff paid an initial partial filing fee on April 23, 2007. This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.02, et seq., and 28 U.S.C. §§ 1915(e) and 1915A.

### I. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. § 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

## II. The Complaint

According to the complaint, in November of 2005, the plaintiff was transferred from FCI Fort Dix in New Jersey, to the Hazelton Federal Prison Camp in Bruceton Mills, West Virginia. After staying at the camp for approximately two weeks, the plaintiff asserts that defendant Wilson removed him from the camp and placed him in the special housing unit ("SHU") at the Hazelton Penitentiary. The plaintiff asserts that he was placed in the SHU "pending reclassification" and that he remained there until he was released back to the camp facility on January 27, 2006.

While in the SHU, the plaintiff asserts that he was ordered by defendants Gonzalez and Murphy to work among the higher security inmates as an orderly. The plaintiff was allegedly told that he was assigned as an orderly because staff feared having higher security inmates work as orderlies. However, the plaintiff asserts that his work assignment was against policy because as a

---

[1] Id. at 327.

low security inmate, he should have been segregated from the higher security inmates.

On January 25, 2006, the plaintiff asserts that he was performing his duties as an Orderly when an inmate threw trash on the floor in front of his cell. When the plaintiff bent down to clean up the trash, the inmate squirted the plaintiff with a bad smelling liquid that the plaintiff believes was a mixture of urine, blood and other unknown substances. The plaintiff asserts that the liquid landed on his face and head, going into his eyes and ears. The plaintiff asserts that a staff member saw what happened and quickly opened the door so the plaintiff could exit the area. The plaintiff asserts that immediately after being squirted with the liquid, his eyes burned. However, staff told plaintiff not to take a bath, but to wait until the matter could be analyzed. Minutes later, a Lieutenant arrived and took pictures of the substance, both on the plaintiff and at the scene of the incident.

Shortly thereafter, the plaintiff asserts that he was seen by a physician's assistant. According to the plaintiff, despite the fact that he had a burning pain in his eyes and ears, the physician's assistant asked him some questions, but did not treat him. The plaintiff asserts that as a result of the assault, he has suffered irreparable damage to his hearing. The plaintiff asserts that he has persistently complained of pain in his eyes and ears since the day of the incident, but has been denied proper treatment. Although he now has trouble hearing, and has to walk with his head angled, the plaintiff asserts that the defendants have refused to provide him proper treatment or to send him to an outside doctor to diagnosis his problems further.

On January 26, 2006, the plaintiff completed a request to staff seeking medical attention. In particular, the plaintiff requested that he be tested for Hepatitis and AIDS since the liquid entered openings in his body. The plaintiff's request was answered by defendant Konchan.

On January 27, 2006, the plaintiff was released from the SHU and transferred back to the camp facility. At around 3:00 p.m. that day, the plaintiff was interviewed about the incident by defendant Gradiska.

On February 8, 2006, the plaintiff complained to staff about problems he was having with his ears since the assault. The plaintiff was interviewed by the staff psychologist. Later that day, the plaintiff was told to pack all of his property in preparation for his transfer to FCI Morgantown. The plaintiff asserts that this transfer was an attempt to cover-up the incident. The plaintiff was transferred that day.

Upon his arrival at FCI Morgantown, the plaintiff asserts that he informed staff of the incident that occurred at Hazelton and the pain he was suffering in his head and ear. However, the plaintiff asserts that staff refused to provide him with the proper treatment or to investigate the matter. It was later suggested that the plaintiff report the incident to defendant Trybus, which he did. In April or May of that year, defendant Trybus spoke to the plaintiff about the incident. The plaintiff asserts that defendant Trybus stated that he would investigate the incident, but that he never did. According to the plaintiff, he described the events surrounding his attack to defendants Trybus, White, Watts, and Fernandez as follows:

> On 12/30/2005, I was placed in USP Hazelton's Special segregation Housing Unit, without knowing the reason why I was placed there by staff. A copy of the reason was brought to myself on 12/31/05 by staff revealing the reason as pending re-classification. While in the shu[,] I was given a (sic) Order to work as shu orderly by Lt. Gonzales and Lt. Murphy. On that detail I remain in contact with inmates from the USP who's (sic) classification were maximum security, as well as, other inmates that were in transit. One inmate name Smith from Range #1, cell block 109 consistently demanded Plaintiff to transfer and deliver letters; controlled substances and smoking tobacco material between themselves from one range to another, which Plaintiff refused to do. Because of that refusal, it

4

> made the inmates angry with Plaintiff, since he became a (sic) obstacle and prevented transactions which were happening previously by other inmates who were oderlies. The inmates further instructed Plaintiff to remove himself from the orderly duties so that staff would replace him with one of their friends who would cooperate, and Plaintiff requested staff to be taken out of that detail, and the defendants at USP [H]azelton refused. Thereafter, Plaintiff was confronted with razors blades being thrown at him, as well as, with urine feces as he cleaned the hallways. On one occassions (sic) Defendant Gonzales, Murphy, Phelps and Corras, heard the threats made towards (sic) Plaintiff and his family in the hallways. The treats (sic) included taking the life of my wife and children along with myself upon their release from prison, and by sending outside family members on such deadly missions. After being tramatized (sic) from the incident and treats (sic), Plaintiff told defendant Corras around 9:00 a.m. not to send him to work in Range 1 again. Corras then told the request to Lt. Murphy, and Murphy ordered Corras to escort Plaintiff still into Range 1 to clean. Although Corras was present, the same threats continued. On the same day, Lt. Gonzales, ordered Plaintiff to clean blood from Range 1, despite [the fact that] Plaintiff informed him of the on going threats to his life and family from inmate Smith, whose name was posted on the outside of his cell door. Despite [the fact that] Plaintiff requested masks and glove(s) for the detail of cleaning up blood, that request was refused by Gonzales, who only provided gloves. On Wednesday 01/25/06, between 7:00 pm to 8:00 pm, Plaintiff was ordered again to clean Range 4, where inmate from cell 223, with the previous incident on 01/19/06, was, to clean human feces from the walls in one cell which was smeared on the walls. This was when inmate from cell 223 asked for a garbage bag made threats again for refusal to give him a garbage bag. While cleaning range 4, and waited for the staff to open the door to leave that range after cleaning. The inmate in cell 223 throwed (sic) trash on the floor from under his door into the hallway, and I returned to clean it up and after bending to clean it . . . that [is] when the incident happened with him squirting the liguid (sic) in my face and ear.

Complaint at 10.

The plaintiff further asserts that the inmates threatening him knew the names of his family members, as well as their home addresses. As a result, the plaintiff's family moved to Israel on August 31, 2006, to ensure their protection and safety from these individuals. The plaintiff asserts

5

that he informed defendants Haynes, Young, Leisure, Gradiska and the unknown Captain of the threats, but that those defendants refused to remove the plaintiff from the SHU until after the incident giving rise to this case occurred. In addition, the plaintiff asserts that a mere 12 days later, he was transferred to FCI Morgantown for his "protection."

Upon his arrival at FCI Morgantown, the plaintiff complained to staff concerning the pain he was experiencing in his ear and head, and of his partial hearing loss. The plaintiff asserts that he was told by defendants Blanco, Brescoach and Waters that what happens at other institutions is not their concern. Those defendants apparently examined the plaintiff because the plaintiff asserts that they told him there was "nothing wrong within his ear besides a[n] infection." As a result, the plaintiff was prescribed medication for the ear infection. The plaintiff also asserts that defendant Blanco believed that the plaintiff came to prison with a hearing problem and that his complaints were not related to the incident which occurred at Hazelton. Therefore, defendant Blanco failed to properly diagnose or treat the plaintiff's condition. The plaintiff filed administrative remedies with defendants Gutierrez, McClintock, Fernandez, White, Watts and Layhue, but his grievances were denied.

As relief, the plaintiff seeks the following:

(1) monetary damages in the amount of $36 million;

(2) a declaratory judgment stating that the defendants deprived the plaintiff of a constitutional right;

(3) a preliminary injunction ordering that the plaintiff be transferred to an outside medical facility for medical treatment;

(4) punitive and compensatory damages in the amount of $36 million; and

(5) $10,000 in attorneys' fees.

### III. Analysis

**A.   Defendants Wilson, Fernandez, Garcia, Layhue, Gutierrez, McClintock, White and Watts**

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Thus, in order to establish liability in a Bivens case, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, the plaintiff does not allege any personal involvement on the part of defendants Wilson, Fernandez, Garcia, Layhue, Trybus, Gutierrez, McClintock, White and Watts. In fact, the plaintiff does not make any allegations whatsoever against defendant Garcia. Additionally, the plaintiff merely asserts that defendant Trybus failed to investigate his claims. However, defendant Trybus is an investigating officer at FCI Morgantown, not USP Hazelton where the incident took place. Presumably, staff at USP Hazelton was already investigating the incident and the plaintiff fails to assert how defendant Trybus would have had any authority to investigate an incident that took place at another institution, or how his failure to do so rises to the level of a constitutional violation. Likewise, the plaintiff fails to assert how defendant Wilson violated his constitutional

7

rights. Although defendant Wilson told the plaintiff he was moving to the SHU pending reclassification, the plaintiff makes no allegations that defendant Wilson knew he was being threatened or failed to act on that knowledge.

With respect to defendants Fernandez, Layhue, Gutierrez, McClintock, White and Watts, it appears that the plaintiff has named those defendants merely in their official or supervisory capacities. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under Bivens is against federal officials in their individual capacities, not the federal government, and the defendants cannot be sued in their official capacities.

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, Plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or

tacit authorization of the offensive practice. Id. In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Id.

In this case, the plaintiff has not provided any evidence that defendants Fernandez, Layhue, Gutierrez, McClintock, White and Watts tacitly authorized or were indifferent to an alleged violation of his constitutional rights. Moreover, to the extent the plaintiff may be asserting that these defendants violated his constitutional rights by denying his institutional grievances, that claim is also without merit as this is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Accordingly, the plaintiff cannot maintain his claims against defendants Fernandez, Layhue, Gutierrez, McClintock, White and Watts.

**B.    Defendants Gonzales, Murphy, Phelps, Curras, Young, Leisure, Haynes, Captain at Hazelton, and Gradiska**

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

9

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837.

Here, the plaintiff states that he was repeatedly threatened with bodily harm while working as an Orderly in the SHU. The plaintiff asserts that he personally informed defendants Gonzales, Murphy, Phelps, Curras, Young, Leisure, Haynes, Captain at Hazelton, and Gradiska about the threats on his life. However, the plaintiff asserts that the defendants ignored his complaints and failed to remove him from the threatening environment. The plaintiff was eventually assaulted by another inmate and allegedly sustained an injury as a result.

Based on the facts as stated in the complaint, the undersigned is of the opinion that the plaintiff's claim against defendants Gonzales, Murphy, Phelps, Curras, Young, Leisure, Haynes, Captain at Hazelton, and Gradiska for the failure to protect should not be summarily dismissed at this time. Thus, the undersigned recommends that those defendants be made to file an answer as to this claim.

### C. Defendants Konchan, Brescoach, Waters, and Blanco

To state a claim under the Eighth Amendment for ineffective medical assistance, Plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's

attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing

Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

With regard to defendants Konchan, Brescoach, Waters and Blanco, the plaintiff has, at best, alleged only a difference in opinion between himself and these medical professionals, as to his course of treatment.[2] Therefore, the plaintiff has failed to state a claim for deliberate indifference to his serious medical needs and these defendants should be dismissed.

## IV. Recommendation

For the reasons set forth in this Opinion, the undersigned makes the following recommendations:

(1) The plaintiff's claims against defendants Wilson, Fernandez, Garcia, Layhue, Trybus, Gutierrez, McClintock, White and Watts be **DISMISSED with prejudice** for the failure to state a claim;

(2) The plaintiff's claims defendants Gonzales, Murphy, Phelps, Curras, Young, Leisure, Haynes, Captain at Hazelton, and Gradiska for the failure to protect be **SERVED** upon those defendants **by the United States Marshal Service** and an Answer be filed;[3] and

(3) The plaintiff's claims against defendants Konchan, Brescoach, Waters, and Blanco for deliberate indifference to serious medical needs by **DISMISSED with prejudice** for the failure to state a claim.

Within ten (10) days after being served with a copy of this recommendation, any party may

---

[2] The defendants diagnosed the plaintiff with an ear infection and have treated him accordingly. The plaintiff believes he should be seen by outside doctors or specialist for further evaluation of his ear.

[3] Because the defendants are all federal employees, copies of the summons and complaint should also be served on the United States Attorney for the Northern District of West Virginia and the Attorney General of the United States by certified mail, return receipt requested. See Fed.R.Civ.P. 4(I). The defendants shall then have 60 days to answer the complaint. See Fed.R.Civ.P. 12(a)(3).

file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208.

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: November 8, 2007.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE