# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AVINOAM DAMTI,

        Plaintiff,

v.                                                 Civil Action No. 2:07cv28
                                                 (Judge Maxwell)

OFFICER GONZALEZ, OFFICER MURPHY,
OFFICER PHELPS, OFFICER CURRAS, OFFICER,
R. WILSON, OFFICER VERONICA FERNANDEZ,
OFFICER WILLIAM LAYHUE, OFFICER R. TRYBUS,
OFFICER YOUNG, OFFICER LEISURE, OFFICER GARCIA,
CAROL KONCHAN, WARDEN AL HAYNES, DOMINIC
GUTIERREZ, SR., SUSAN S. MCCLINTOCK, DR. WATERS,
ADMINISTRATOR BRESCOACH, MARTHA BLANCO, KIM
WHITE, HARRELL WATTS, CAPT. OF USP HAZELTON
AND OFFICER GRADISKA,

        Defendants.

## OPINION/REPORT AND RECOMMENDATION

### I.  Procedural History

On April 3, 2007, the *pro se* plaintiff initiated this civil action by filing a complaint against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  On May 30, 2008, the Honorable Robert E. Maxwell, United States District Judge, dismissed with prejudice, defendants Wilson, Fernandez, Garcia, Layhue, Trybus, Gutierrez, McClintock, White, Watts, Konchan, Brescoach, Waters and Blanco, and the plaintiff's claim of deliberate indifference to serious medical needs.  Thus, the only claim that remains in this case is the plaintiff's Eighth Amendment claims against defendants, Gonzalez, Murphy, Phelps, Curras, Young, Leisure, Haynes, Captain at Hazelton and Gradiska for the failure to protect.

On October 30, 2008, the defendants[1] filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

Because the plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on November 3, 2008, advising the plaintiff of his right to file a response to the defendants' motion.

The plaintiff filed his response on February 18, 2009.

## II. <u>Contentions of the Parties</u>

### A. <u>The Complaint</u>

According to the complaint, in November 2005, the plaintiff was transferred from FCI Fort Dix in New Jersey, to the Hazelton Federal Prison Camp in Bruceton Mills, West Virginia. After staying at the camp for approximately two weeks, the plaintiff asserts that defendant Wilson removed him from the camp and placed him in the special housing unit ("SHU") at the Hazelton Penitentiary. The plaintiff asserts that he was placed in the SHU "pending reclassification" and that he remained there until he was released back to the camp facility on January 27, 2006.

While in the SHU, the plaintiff asserts that he was ordered by defendants Gonzalez and Murphy to work as an orderly among the higher security inmates. The plaintiff was allegedly told that he was assigned as an orderly because staff feared having higher security inmates work as orderlies. However, the plaintiff asserts that his work assignment was against policy because as a low security inmate, he should have been segregated from the higher security inmates.

On January 25, 2006, the plaintiff asserts that he was performing his duties as an orderly when an inmate threw trash on the floor in front of his cell. When the plaintiff bent down to clean up the trash, the inmate squirted the plaintiff with a bad smelling liquid that the plaintiff believes

---

[1] Hereinafter, the term "the defendants" means only the remaining defendants -- Gonzalez, Murphy, Phelps, Curras, Young, Leisure, Haynes, Captain at Hazelton and Gradiska

was a mixture of urine, blood and other unknown substances. The plaintiff asserts that the liquid landed on his face and head, going into his eyes and ears. The plaintiff asserts that a staff member saw what happened and quickly opened the door so the plaintiff could exit the area. The plaintiff asserts that immediately after being squirted with the liquid, his eyes burned. However, staff told plaintiff not to take a bath, but to wait until the substance could be analyzed. Minutes later, a Lieutenant arrived and took pictures of the substance, both on the plaintiff and at the scene of the incident. The plaintiff asserts that as a result of the assault, he has suffered irreparable damage to his hearing.

On January 27, 2006, the plaintiff was released from the SHU and transferred back to the camp facility. At around 3:00 p.m. that day, the plaintiff was interviewed about the incident by defendant Gradiska.

On February 8, 2006, the plaintiff complained to staff that he was having problems with his ears since the assault. Later that day, the plaintiff was told to pack all of his property in preparation for his transfer to FCI Morgantown. The plaintiff was transferred that day. The plaintiff asserts that his transfer was an attempt to cover-up the incident.

Upon his arrival at FCI Morgantown, the plaintiff asserts that he informed staff of the incident that occurred at Hazelton and the pain he was suffering in his head and ear. However, the plaintiff asserts that staff refused to provide him with the proper treatment or to investigate the matter. It was later suggested that the plaintiff report the incident to defendant Trybus, which he did. In April or May of that year, defendant Trybus spoke to the plaintiff about the incident. The plaintiff asserts that defendant Trybus stated that he would investigate the incident, but that he never did. According to the plaintiff, he described the events surrounding his attack to defendants Trybus,

White, Watts, and Fernandez as follows:

On 12/30/2005, I was placed in USP Hazelton's Special segregation Housing Unit, without knowing the reason why I was placed there by staff. A copy of the reason was brought to myself on 12/31/05 by staff revealing the reason as pending re-classification. While in the shu[,] I was given a (sic) Order to work as shu orderly by Lt. Gonzales and Lt. Murphy. On that detail I remain in contact with inmates from the USP who's (sic) classification were maximum security, as well as, other inmates that were in transit. One inmate name Smith from Range #1, cell block 109 consistently demanded Plaintiff to transfer and deliver letters; controlled substances and smoking tobacco material between themselves from one range to another, which Plaintiff refused to do. Because of that refusal, it made the inmates angry with Plaintiff, since he became a (sic) obstacle and prevented transactions which were happening previously by other inmates who were oderlies. The inmates further instructed Plaintiff to remove himself from the orderly duties so that staff would replace him with one of their friends who would cooperate, and Plaintiff requested staff to be taken out of that detail, and the defendants at USP [H]azelton refused. Thereafter, Plaintiff was confronted with razors blades being thrown at him, as well as, with urine feces as he cleaned the hallways. On one occassions (sic) Defendant Gonzales, Murphy, Phelps and Corras, heard the threats made towards (sic) Plaintiff and his family in the hallways. The treats (sic) included taking the life of my wife and children along with myself upon their release from prison, and by sending outside family members on such deadly missions. After being tramatized (sic) from the incident and treats (sic), Plaintiff told defendant Corras around 9:00 a.m. not to send him to work in Range 1 again. Corras then told the request to Lt. Murphy, and Murphy ordered Corras to escort Plaintiff still into Range 1 to clean. Although Corras was present, the same threats continued. On the same day, Lt. Gonzales, ordered Plaintiff to clean blood from Range 1, despite [the fact that] Plaintiff informed him of the on going threats to his life and family from inmate Smith, whose name was posted on the outside of his cell door. Despite [the fact that] Plaintiff requested masks and glove(s) for the detail of cleaning up blood, that request was refused by Gonzales, who only provided gloves. On Wednesday 01/25/06, between 7:00 pm to 8:00 pm, Plaintiff was ordered again to clean Range 4, where inmate from cell 223, with the previous incident on 01/19/06, was, to clean human feces from the walls in one cell which was smeared on the walls. This was when inmate from cell 223 asked for a garbage bag made threats again for refusal to give him a

4

garbage bag. While cleaning range 4, and waited for the staff to open the door to leave that range after cleaning. The inmate in cell 223 throwed (sic) trash on the floor from under his door into the hallway, and I returned to clean it up and after bending to clean it . . . that [is] when the incident happened with him squirting the liguid (sic) in my face and ear.

Complaint at 10.

The plaintiff further asserts that the inmates threatening him knew the names of his family members, as well as their home addresses. As a result, the plaintiff's family moved to Israel on August 31, 2006, to ensure their protection and safety from these individuals. The plaintiff asserts that he informed defendants Haynes, Young, Leisure, Gradiska and the unknown Captain of the threats, but that those defendants refused to remove the plaintiff from the SHU until after the incident giving rise to this case occurred. In addition, the plaintiff asserts that a mere 12 days later, he was transferred to FCI Morgantown for his "protection."

**B.   The Defendants' Motion**

In their motion, the defendants request the dismissal or denial of the plaintiff's complaint for the following reasons:

(1) the plaintiff has failed to exhaust his administrative remedies;

(2) defendant Betler[2] should be dismissed from this action because he was never served;

(3) Bivens liability may not be premised on a theory of *respondeat superior*;

(4) the defendants were not deliberately indifferent to the plaintiff's safety;

(5) the defendants are entitled to qualified immunity; and

(6) any Bivens claims against the defendants in their official capacities are barred by the

---

[2] In their motion, the defendants name James Betler as the defendant the plaintiff names in the complaint as the Captain at USP-Hazelton.

doctrine of sovereign immunity.

**C.   The Plaintiff's Response**

In his response, the plaintiff asserts that he has exhausted all available administrative remedies.  The plaintiff implores the Court to examine the administrative remedies he has attached to his complaint at exhibits B and E1 through E13.  Additionally, the plaintiff does not object to defendant Betler's dismissal in this action, but he does dispute that the defendants are entitled to qualified immunity.  Additionally, the plaintiff asserts that the defendants have not been sued in their official capacities, thereby negating the defendants' argument as to sovereign immunity.  Finally, the plaintiff reasserts his claim that the defendants failed to protect him and argues that the facts as presented by the defendants are not true.

## III.   Standard of Review

**A.   Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations.  Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990).  Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.    Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson at  256.  The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment.  Id. at 248.  Summary judgment is proper only "[w]here  the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita, at 587 (citation omitted).

# IV.   Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.   42 U.S.C. § 1997(e)(a).   Exhaustion as provided in § 1997(e)(a) is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001).  A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available.   Booth at 741.   Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.  See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."  Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion."  Woodford, 548 U.S. at 92-94 (emphasis added).  Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  Id. at 101-102.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results.  See 28 C.F.R. § 542.10,

---

[3] Id.

*et seq*.  This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated.  If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located.  (For inmates confined at FCI-Hazelton or FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.)  If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal.  An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In this case, it is undisputed that the plaintiff has initiated the Bureau's administrative remedy process on several occasions.  Resp't Ex. 4, ¶ 6 & Att. A.  The defendants argue, however, that the plaintiff has not initiated the administrative remedy process with regard to the failure to protect claim raised in the instant complaint.  Id. at ¶ 8 & 9.  A review of the documents attached to the plaintiff's complaint reveal that he has exhausted his administrative remedies with regard to his claim that the defendants were deliberately indifferent to his serious medical needs failing to properly treat the injuries he allegedly suffered as a result of the assault by the other inmate.  Complaint at Ex. E-6.  Nonetheless, although those remedy forms explain how the plaintiff was injured, *i.e.*, that he was assaulted by another inmate while working as an orderly in the SHU, they seek redress only for the alleged deliberate indifference to the plaintiff's serious medical needs, not for any alleged failure to protect.  Id. at Ex. E-1 to E-11.  Additionally, because the relief sought in those remedies was proper medical treatment, the BOP responded only as to that claim, and was not on notice that the plaintiff was also seeking redress for an alleged failure to protect.  Id.  Further, although it appears that the plaintiff did send a letter to BOP officials about the alleged assault, that

letter cannot constitute the exhaustion of administrative remedies as the plaintiff did not follow the proper procedures for exhaustion.  Id. at E-12 to E-14.  Thus, it is clear from the complaint, and the plaintiff's exhibits, that he did not *fully* and *properly* exhaust his claim that the defendants failed to protect him.  For that reason, the defendants' motion to dismiss should be granted and this case dismissed with prejudice[4] from the active docket of this court.  See Woodford, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").[5]

## V.  Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (dckt. 44) be **GRANTED to the extent** that it seeks the dismissal of this case for the failure to exhaust.  In all other respects, the motion should be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.   28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);

---

[4] Dismissal with prejudice is appropriate because the plaintiff is now procedurally barred from raising his failure to protect claim in the administrative remedy process.  See 28 C.F.R. 542.14(a) (a prisoner has 20 calendar days following the date on which the incident occurred, to file a formal administrative remedy).

[5] Because the plaintiff's claims are not exhausted, this court is otherwise without jurisdiction to consider the merits of the plaintiff's claim.  Thus, the undersigned will not consider the additional arguments made by the defendants in their motion.

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: March 24, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE